UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:15-CR-52-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHON BERNARD PEAKE, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon Defendant's motion to suppress evidence seized during a police search of his residence on December 9, 2014. The motion has been briefed and a hearing was conducted on September 28, 2015. Upon consideration of the record and the testimony presented at the hearing, the Court announced its ruling from the bench, denying Defendant's motion to suppress. This memorandum supplements the Court's oral ruling.

**I.   Background**

Defendant's home was searched pursuant to a search warrant. Police were searching for a stolen handgun, based on the affidavit of Officer Chad Baker of the Harrodsburg, Kentucky Police Department. According to the affidavit, Marvin Dearing reported that three handguns had been stolen from his residence. Officer Baker received information from a pawn shop in Harrodsburg that the shop had received in pawn one of the weapons Dearing had

reported stolen. Officer Baker interviewed Sylvia Hartman, the individual reported to have pawned the handgun. Hartman told police that her daughter, Ashley Brown, had asked her to pawn the gun because Brown did not have the identification required by the pawn shop to pawn a weapon. When police interviewed Brown, she advised that she had received the weapon pawned, as well as a second weapon, from Jeremy Yeager as repayment for money he had stolen from her. Brown stated that after accepting the two weapons from Yeager, she asked Hartman to pawn one of them and gave the other to Stephon Peake at the residence at 420 Robin Street. She further stated that she owed Peake money from a previous narcotics transaction and that she had given him the weapon as repayment. Hartman stated that she was present when Peake took possession of the firearm and provided corroborating details. Based upon these circumstances, Officer Baker obtained a warrant to search 420 Robin Street for the .40 caliber pistol that was reported stolen from Marvin Dearing's home.

When police executed the search warrant, they located Peake in a bedroom, in bed, completely covered by a blanket. Officers drew their weapons and asked Peake if he had any guns. Peake directed them to a box which contained the .357 caliber handgun stolen from Dearing's residence. Subsequently, Peake reported that he was naked and asked if he could don a pair of jeans that was on the floor next to the bed. Officer Whitenack testified

2

that, when he picked up the jeans to hand them to Peake, one side felt heavy, so he checked the pocket for weapons. Upon checking the pocket, Officer Whitenack located a bag of heroin and a bundle of cash, which were seized. Peake argues that the warrant was invalid because it listed the .40 caliber pistol rather than the .357, which was the weapon located and seized. He also contends that the police exceeded the scope of the warrant when Officer Whitenack searched the pockets of the jeans.

## II. Discussion

As stated, three handguns were reported stolen from Marvin Dearing's residence: a .40 caliber pistol; a 9mm pistol; and a .357 revolver. It is undisputed that the 9mm pistol was pawned. Accordingly, prior to the application for the search warrant, the .40 caliber pistol and the .357 revolver were unaccounted for. In applying for the search warrant, however, Officer Baker stated that the .40 caliber pistol was likely to be at 420 Robin Street and made no mention of the revolver. Peake contends that this is an inconsistency for which there is no explanation, and it renders the warrant invalid.

When a search warrant applicant seeks to search a specific location, the affidavit must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "The critical element in a reasonable search is not that the owner of property

3

is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). Here, there was reasonable cause to believe that the .40 caliber pistol would be found in Defendant's residence. Ashley Brown reported to police that she had given one of the stolen firearms to Peake. Further, Officer Baker testified that, based upon Brown's description of the firearm she had given to Peake, he concluded that it was the .40 caliber pistol and not the .357. The fact that the .357 was the firearm that was actually found does not affect the validity of the search warrant or the propriety of the search.

In any event, the good-faith exception to the Fourth Amendment exclusionary rule would apply in this situation. *See United States v. Leon*, 468 U.S. 897 (1984). There is no indication that the officers' reliance on the warrant was not in good faith or objectively unreasonable; that the affidavit was inadequate; that the issuing judge failed to act in a neutral and detached manner; or that the affiant was misleading. *See United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007). Accordingly, even if the warrant was determined to be invalid, the seized evidence would not be barred because it was seized in "reasonable, good-faith reliance" on the warrant. *Leon*, 468 U.S. at 905.

4

Additionally, Officer Whitenack did not exceed the scope of the search warrant by checking the pockets of Defendant's jeans for weapons. In executing a search warrant, officers may "take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 614 (2007). Police officers are well-advised to be particularly cautious when executing warrants in residences, as these are the "kind[s] of transaction[s] that may give rise to sudden violence." *See United States v. Taylor*, 666 F.3d 406, 410 (6th Cir. 2012). Officer Whitenack acted permissibly in checking the jeans for weapons before handing them over to Peake. Based on his testimony at the suppression hearing, the Court concludes that the heavy and bulky nature of the contents of the pocket justified Officer Whitenack's reaching into the pocket. Although it is unlikely that the .40 caliber pistol could have fit into the pocket, a smaller weapon such as a knife or a derringer easily could have been inside, obscured by the softer contents. The fact that this safety check of the clothing revealed narcotics rather than a weapon does not render it impermissible. *See United States v. Walker*, 181 F.3d 774, 779–80 (6th Cir. 1999).

Finally, Peake challenges the credibility of Brown and Hartman, stating that Brown was known by police to have pawned stolen weapons before. Further, Peake points out, Brown stated initially that she possessed only one of the stolen handguns, but

5

later admitted that she had two. She was later found to be in possession of the third weapon—.40 caliber handgun—apparently attempting to return it to Marvin Dearing. While the Court acknowledges that, perhaps, Brown and Hartman are not models of veracity, strong indicia of reliability are present in this particular situation. They provided detailed information, which was corroborated, and, importantly, both spoke to police against their own penal interest. *See United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976).

For the foregoing reasons, and the reasons stated on the record at the conclusion of the suppression hearing, Peake's motion to suppress, [DE 11], is **DENIED.**

This the 30th day of September, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge