UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 5:15-cr-52-JMH-CJS |
| Plaintiff, ) | and |
| ) | Civil No. 5:18-cv-558-JMH-CJS |
| v. ) | |
| ) | |
| STEPHON BERNARD PEAKE, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

\* \* \* \* \* \* \* \* \* \* \*

Stephon Bernard Peake, *pro se*, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (R. 94). The Government has filed its response (R. 102), and Peake has replied (R. 104).[1] Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons given below, it will be recommended that the § 2255 motion be **denied**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

A jury convicted Peake of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 851, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (R. 62). He was sentenced to a total term of 262 months in prison. (*Id.*). On appeal, Peake challenged the denial of his motion to suppress evidence and his request for a lesser-included-offense jury instruction. The Sixth Circuit affirmed. (R. 85). And the Supreme Court denied Peake's petition for writ of certiorari. *Peake v. United States*, 138 S. Ct. 137 (2017).

---

[1] Additionally, Peake filed an "Amended Memorandum of Law for § 2255 Motion," which is essentially a duplicate of his original § 2255 motion. (R. 111). The Court construes the filing as a supplemental reply brief.

In October 2018, Peake filed this § 2255 motion, arguing two claims: (1) his trial counsel was ineffective in connection with his suppression hearing; and (2) his appellate counsel (the same attorney who represented him at the trial level) was ineffective on direct appeal. (R. 94-1, Page ID 937-41). The Government argues that both claims are meritless. (R. 102).

## II.     ANALYSIS

Under § 2255(a), a petitioner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a "petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)). In sum, a petitioner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A petitioner must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964; *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018).

**A.     Peake has not shown that he received ineffective assistance of trial counsel**

Peake's first claim argues that he received ineffective assistance of trial counsel. To successfully assert an ineffective-assistance-of-counsel claim, a petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it

3

is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Peake's convictions arose from a theft of three handguns from a home: a .40 caliber pistol, a 9mm caliber pistol, and .357 caliber revolver. (R. 18, Page ID 71). A search of Peake's home uncovered one of the handguns, the .357 revolver, and heroin. (R. 13-2, Page ID 58). Peake's trial counsel moved to suppress this evidence, arguing that the search warrant "was invalid because it listed the .40 caliber pistol rather than the .357, which was the weapon located and seized." (R. 18, Page ID 71). The Government opposed the motion, arguing that the search warrant affidavit established probable cause and, even if it did not, the officers relied in good faith on the search warrant. (R. 13, Page ID 47).

The search warrant affidavit reveals the following: Officer Chad Baker went to a pawn shop to talk to the owner, who stated that Sylvia Hartman had pawned one of the handguns (identified elsewhere in the record as the 9mm pistol (R. 18, Page ID 71)). (R. 13-2, Page ID 60). Officer Baker interviewed Hartman, who told him that she had pawned the 9mm on behalf of her daughter, Ashley Brown, because Brown did not have the necessary identification. (*Id.*).

Officer Baker interviewed Brown, who stated that she received the 9mm and another handgun (not identified in the affidavit) from Jeremy Yeager as payment for money he had stolen from her. (*Id.*). She advised that the handgun that was not pawned "had been given to Stephen Peake at 420 Robin Street," as payment for a drug debt. (*Id.*). The search warrant listed the .40 handgun as the handgun sought to be seized. (*Id.* at 59).

The District Judge concluded that, although a different handgun (.40) was listed in the warrant than the one ultimately seized (.357), "the validity of the search warrant or the propriety of the search" was not affected. (R. 18, Page ID 72). In so ruling, the Court relied on Officer

4

Baker's testimony at the evidentiary hearing that Brown described the handgun that was not pawned in such a way to lead him to believe it was the .40 handgun. (*Id.*). Specifically, she stated that it was "a shiny semiautomatic"—because police had the 9mm, "the only other semiautomatic was the .40 cal." (R. 68, Page ID 293). Further, the District Judge determined that even if the warrant was invalid, "the good-faith exception to the Fourth Amendment exclusionary rule" applied. (R. 18, Page ID 72) (citing *United States v. Leon*, 468 U.S. 897 (1984)). (R. 18, Page ID 72). Accordingly, the District Judge denied Peake's motion to suppress. (*Id.* at 74).

Peake argues, however, that the "result of the proceeding would have been different" had trial counsel called Hartman and Brown to testify at the evidentiary hearing and played their videotaped police interviews.[2] (R. 94-1, Page ID 939). He contends that their testimony and video interviews would have shown that they did not implicate him in the crime and thus that Officer Baker did not have probable cause to obtain a search warrant for his home. (*Id.* at 938). Further, Peake argues that counsel should have requested a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (requiring a hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and "was necessary to the finding of probable cause"). Because Peake's ineffective-assistance claim argues that trial counsel failed to competently litigate his Fourth Amendment claim, he "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

---

[2] Peake says that his counsel showed him the video interviews one time. (R. 94-1, Page ID 937). Peake's request to obtain a transcript of the interviews was denied in a prior order. (*See* R. 107).

Peake's claim is refuted by the record and law. First, Peake's assertion that the affidavit and record falsely "say that Ms. Hartman implicated" him is misleading. *Id.* at 938. Nowhere does the affidavit say that Hartman specifically identified Peake by his name. (*See* R. 104, Page ID 979 (arguing that Hartman's interview conflicts "[w]here the Government argues that Ms. Hartman specifically said she and Ms. Brown traded a gun to 'Stephon Peake on 420 Robin Street'") (capitalization omitted)). The only statement connecting Hartman with Peake in the affidavit is the following: "Hartman, who had been present during this transaction [in which Brown gave Peake the handgun], advised that Peake had commented that he was a convicted felon and was prohibited from possessing a firearm, but that he had taken the weapon regardless." (R. 13-2, Page ID 60).

Importantly, this statement does not show that Hartman specifically identified Peake by name but indicates that Officer Baker determined that the individual whom Hartman observed during the transaction was Peake. Officer Baker's police report, which is more detailed, supports this conclusion. (R. 13-1, Page ID 54-56). In it, Baker recounts his interview with Hartman: "Hartman states, that after leaving the pawn shop with Brown, they proceeded to a home on Robin Street to one of Brown's and her boyfriends friends, at which she sold a second gun to the subject inside *later identified as Stephan Peake*." (*Id.* at 55 (emphasis added)). This statement thus indicates that Hartman did not identify Peake by name but identified him as a friend of her daughter's. Accordingly, Peake's assertion that "officers conjured up support for the warrant affidavit" is refuted by the record. (R. 94-1, page ID 937).

The more direct focus of Peake's argument is Brown, who did identify Peake according to the affidavit: "The other weapon, previously described in this affidavit, Brown advised had been given to Stephen Peake at 420 Robin Street." (R. 13-2, Page ID 60). Peake argues that this is false

6

because the video interview shows that "it was not Ms. Brown who pointed to Movant; it was the officer! She did not even verbalize her agreement, she merely nods!" (R. 94-1, Page ID 938).

Even accepting Peake's characterization of the video interview as accurate, it would not show that Officer Baker made "reckless and materially false statements" in the search warrant affidavit that would need to be stricken. *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016). Nor would it show that he engaged in "trickery" as Peake alleges. (R. 94-1, Page ID 938). Simply put, it is not material whether Brown first offered Peake's identity, or whether she nodded in confirmation to it when asked by Officer Baker—either version of events would make it fair to say that Brown advised Officer Baker that Peake was the one whom she gave the handgun to. Accordingly, because Peake cannot show that the result of his motion to suppress would have been different had counsel introduced Hartman and Brown's testimony and interviews, or requested a *Franks* hearing, his ineffective-assistance claim fails.

Lastly, Peake summarily argues two other ineffective-assistance-of-trial-counsel claims in his § 2255 motion:

> Other examples of ineffectiveness include counsel's failure to object to and/or challenge the basis for a career offender enhancement. []The predicate offenses don't meet the test according to *Mathis*. This is a critical factor as the prejudice is many years' of incarceration. Also, counsel did not challenge the drug quantity. The record is clear that much of the drugs used to support the sentence were not tested at all! Why didn't Counsel insist that all the drugs attributed to him be tested? Competent counsel surely would have done that and if done, there is far more than a reasonable probability of a different outcome, well meeting the *Strickland* standard.

(R. 94-1, Page ID 940-41). However, Peake's failure to specifically articulate the factual and legal bases for his claims, e.g., how his predicate offenses fail to qualify as such under *Mathis v. United States*, 136 S. Ct. 2243 (2016), and what legal basis counsel should have argued to challenge the drug quantity, constitute a waiver of his claims. *See Thomas v. United States*, 849 F.3d 669, 679

7

(6th Cir.), *reh'g denied* (Apr. 27, 2017), *cert. denied*, 138 S. Ct. 261 (2017) (noting that a petitioner's claims that "are tacked on to a list of the failed ineffective assistance of counsel arguments" are waived because "[a] party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation"); *also see* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b).

Regardless, the semblance of claims that he presents fail on the merits. First, *Mathis* concerned the modified-categorical approach and its application to a law that "enumerates various factual means of committing a single element" to determine if the crime is a "violent felony" under the Armed Career Criminal Act; "violent felony" has a counterpart in "crime of violence," for purposes of determining if a defendant is a career offender under USSG §§ 4B1.1 and 4B1.2 (2015 Guidelines Manual). 136 S. Ct. at 2249. However, Peake did not receive his career-offender designation based on prior "crimes of violence" but on prior felony "controlled substance offenses," *see* USSG §§ 4B1.1 and 4B1.2 (2015 Guidelines Manual). (R. 64, Page ID 243) ("The defendant's criminal history includes prior felony drug convictions, which statutorily enhanced his statutory maximum in this case and qualified him as a Career Offender, pursuant to USSG §4B1.1(b)(2).). Accordingly, Peake has not shown that *Mathis* would apply to his case.

Second, trial counsel did unsuccessfully argue at sentencing that a lab technician's failure to test all the bags of drugs should result in Peake being held responsible for a lesser quantity of drugs than the 52.329 grams of heroin stated in the presentence investigation report. (R. 75, Page ID 863; R. 65, Page ID 255). However, as noted at sentencing, the bag that was tested weighed "42 grams." (R. 75, Page ID 863). Accordingly, because the applicable base offense level under USSG § 2D1.1(c)(11) (2015) specifies level 18 for "[a]t least 40 G but less than 60 G of Heroin," this argument, even if successful, would not have impacted Peake's base offense level because his

drug quantity for the tested drugs was still in the applicable range. Peake cannot successfully claim that his counsel was ineffective for failing to raise a non-meritorious argument. *See Tisdale v. Eberlin*, No. 4:08CV2756, 2010 WL 455279, at *6 (N.D. Ohio Feb. 3, 2010) ("[B]y definition, a non-meritorious argument . . . cannot form the basis for ineffective assistance of counsel.").

### B. Peake has not shown that he received ineffective assistance of appellate counsel

In his second claim, Peake summarily argues that his appellate counsel (same attorney as trial counsel) was ineffective because he "could hardly appeal on the basis of his own screw-ups." (R. 94-1, Page ID 941). He adds, without elaboration, that counsel displayed a "lack of willingness to communicate during the preparation of the appeal" and that he "had to struggle to get counsel to do anything or talk to him about the issues he believed were relevant to the case on appeal." (*Id.*). "[I]neffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

Like before, this claim is waived by Peake's failure to factually and legally develop it. *See Thomas*, 849 F.3d at 679. Moreover, to the extent that Peake argues that his appellate counsel was ineffective for failing to raise on direct appeal some version of the claims that he presents here, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### C. Peake is not entitled to an evidentiary hearing

Peake requests an evidentiary hearing in his construed supplemental reply brief. (R. 111, Page ID 1015). However, no hearing is necessary "where the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)

9

(quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Here, the briefings on Peake's § 2255 motion, along with the record in this case, conclusively show that he is not entitled to the relief he seeks. Accordingly, no evidentiary hearing is required, and it will be recommended that his request be denied.

### III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Peake's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it is further recommended that a certificate of appealability be denied upon the District Judge's entry of the final order in this matter.

### IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

(1) Peake's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 94), including his request for an evidentiary hearing, **be denied;**

(2) a Certificate of Appealability **be denied** by the District Judge in conjunction with the entry of the final order in this matter;

(3) Judgment in favor of the United States **be entered** contemporaneously with the District Judge's entry of the final order; and

(4) this action **be stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 20th day of August, 2019.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\habeas petitions\2255 ineffective assistance counsel\15-cr-52-JMH Peake R&R final.docx